UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONETTE FRY, | : | CIVIL NO.: 1:19-CV-01115 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| SWEET HOME HEALTHCARE, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**I. Introduction.**

This case arises out of Antonette Fry's allegations regarding workplace discrimination. Presently before the court is the motion for default judgment against the defendants by the plaintiff, Antonette Fry. Based on the following analysis, we will enter default judgment against the defendants.

**II. Background and Procedural History.**

The plaintiff, Antonette Fry ("Fry") proceeds on a second amended complaint, filed on January 6, 2020, raising two counts under the Pregnancy Discrimination Act amendment to Title VII and Section 1981. *Doc. 19*; *see also* 42 U.S.C. §§ 2000e-2(a), 2000e(k), 1981. The second amended complaint names two defendants: Sweet Home Healthcare, LLC, and Sweet Home Primary Care of Harrisburg, LLC (together "Sweet Home"). *Doc. 19*.

The defendants filed an answer to the second amended complaint on January 16, 2020. *Doc. 20*. Thereafter, counsel for Sweet Home was unable to contact his client. *Doc. 22*. On June 24, 2020, counsel for Sweet Home filed a motion to withdraw as counsel based upon an inability to contact his clients as well as nonpayment. *Doc. 25*. We granted counsel's motion on June 25, 2020, and we further ordered Sweet Home to retain new counsel as artificial entities cannot proceed *pro se* in federal court. *Doc. 27*. Counsel served our order on Sweet Home, but we received no response from Sweet Home, and no counsel entered an appearance on Sweet Home's behalf. *Doc. 28*. On August 6, 2020, Fry requested and received a Clerk's entry of default against Sweet Home. *Docs. 29*, *30*. Fry filed the instant motion for default judgment, along with a brief in support, on August 31, 2020.[1] *Docs. 31*, *32*. Finally, we scheduled and held an evidentiary hearing during which we heard Fry's testimony regarding damages. *Docs. 33*, *34*.

**III. Discussion.**

    **A. Default judgment against Sweet Home is appropriate.**

"Upon the entry of default, Defendant concedes the well-pleaded facts in Plaintiff's complaint." *United States v. Sourbeer*, No. 1:16-CV-1161, 2016 WL 5373641, at *1 (M.D. Pa. Sept. 26, 2016) (citing *Comdyne I, Inc. v. Corbin*, 908

---

[1] Fry provided Sweet Home with the requisite notice of her application for default judgment by sending via certified mail her motion for default judgment on the same date. *Doc. 31* at 6; *see also* Fed. R. Civ. P. 55(b)(2).

F.3d 1142, 1149 (3d Cir. 1990)).  We will therefore "accept all factual allegations in the complaint as true, except those relating to the amount of damages." *Id.* Following the entry of default pursuant to Fed. R. Civ. P. 55(a), the court may enter a default judgment against a party which has failed to plead or otherwise defend pursuant to Fed. R. Civ. P. 55(b)(2).  "When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2685 (4th ed.).  "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).  "Although all well-pleaded facts in the plaintiff's complaint are accepted as true after entry of default, the default itself does not establish liability or conclusions of law." *Doe v. Whitebread*, No. CV 3:15-1165, 2017 WL 590272, at *2 (M.D. Pa. Feb. 14, 2017).  "A default also does not establish the amount of damages that are appropriate." *Id*.  Rather, "[t]he determination of damages must be made by the court." *Id*.  Should the *Chamberlain* factors weigh in favor of an entry of default judgment, we also "must consider whether the 'unchallenged facts constitute a legitimate cause of action'" before entering default judgment. *T.D.*

3

*Melchiorre, Inc. v. Victory Foodservice Distribs. Corp.*, No. 3:18-CV-1993, 2021 WL 426493, at *1 (M.D. Pa. Feb. 8, 2021) (quoting *Malibu Media, LLC v. Everson*, No. 4:19-CV-01048, 2021 WL 84180, at *2 (M.D. Pa. Jan. 11, 2021)).

We turn to the *Chamberlain* factors. The first factor, prejudice to the plaintiff, weighs in favor of the entry of default judgment here. Fry faces the prejudice of not being able to proceed with this action if default judgment is denied because Sweet Home has not further defended this action. Although Sweet Home appeared in this case during its early stages, Sweet Home has since failed to appear or answer, even in the face of our order. Indeed, and especially given the amount of time that has elapsed since Sweet Home filed an answer, prejudice to Fry can only be avoided by entering default judgment against Sweet Home.

The second factor, whether Sweet Home has a litigable or meritorious defense, weighs against the entry default judgment. "The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established at trial, would constitute a complete defense to the action." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (internal quotations and citation omitted). Before Sweet Home's counsel withdrew, Sweet Home filed an answer to Fry's second amended complaint. *Doc. 20*. Sweet Home's answer denies Fry's allegations, and further responds that Fry "was terminated as a result of numerous violations of [Sweet Home's] employee handbook" or "for a valid

4

business reason and without discriminatory intent." *Id.* at 4.  While Sweet Home does not provide us with the employee handbook, Sweet Home alleges that Fry "repeatedly declined shifts, called out from scheduled shifts, and failed to regularly contact her supervisor for new work opportunities" in violation of the employee handbook. *Id.* at 2-3.  If Sweet Home established at trial that Fry was terminated for a nondiscriminatory reason, rather than on the basis of her sex or race, then Fry's discrimination claims would fail.  Thus, the second factor weighs against the entry of default judgment.

But the third factor, whether Sweet Home's delay is due to culpable conduct, weighs heavily in favor of the entry of default judgment.  "In considering a defendant's culpability, i.e., whether its conduct was excusable, courts apply the standard of 'willfulness' or 'bad faith.'" *Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 142 (3d Cir. 2017) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984)).  "Reckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard." *Id.* (quoting *Hritz*, 732 F.2d at 1182-83).  And a "defendant's culpable conduct weighs heavily in the evaluation of whether to grant or set aside a default judgment." *E. Elec. Corp. of N.J. v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 604-05 (E.D. Pa. 2009) (citing *Farnese v. Bagnasco*, 687 F.2d 761 (3d Cir. 1982)).

Here, Sweet Home's own counsel attempted to contact Sweet Home multiple times to no avail. *Docs. 23*, *28*. And our order directing Sweet Home to obtain the appearance of counsel went unheeded. *Doc. 27*. Additionally, Fry sought and received the Clerk's entry of default in August of 2020, and Sweet Home made no response—neither did Sweet Home respond to Fry's motion for default judgment, which Fry sent via certified mail. *Docs. 29-31*. Thus, it appears that Sweet Home has recklessly disregarded communications from Fry, this court, and its own counsel since as early as May 8, 2020. And it cannot be said that Sweet Home investigated the source of Fry's injury as they have failed to defend themselves in this action since filing an answer on January 16, 2020, and are entirely derelict in their duty to defend this action. Thus, the third factor weighs heavily in favor of the entry of default judgment.

Accordingly, the *Chamberlain* factors weigh in favor of the entry of default judgment against Sweet Home. We will therefore turn to next step of our analysis before we grant Fry's motion for default judgment—whether the unchallenged facts in Fry's second amended complaint constitute a legitimate cause of action under Title VII and Section 1981.

### B. Fry pleads legitimate claims under Title VII and Section 1981.

The *McDonnell Douglas* burden-shifting framework applies to Fry's claims since they "are based on circumstantial rather than direct evidence of

discrimination," and the first burden falls to the plaintiff to plead a prima facie case. *Anderson v. Boeing Co.*, 694 F. App'x 84, 86 (3d Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also George v. Pa. Turnpike Comm'n*, No. 1:18-cv-00766, 2021 WL 1212576, at *3 (M.D. Pa. March 31, 2021) (finding the burden-shifting framework applicable to Section 1981 race discrimination claims) (citing *Vaughan v. Boeing Co.*, 733 F. App'x 617, 622 (3d Cir. 2018) ("All claims of race discrimination brought under Title VII, Section 1981, or the PHRA are governed by the familiar burden-shifting framework set forth in *McDonnell Douglas*.")).

As to Fry's pregnancy discrimination claim, a prima facie claim of pregnancy discrimination requires four elements: (1) the plaintiff was pregnant and the employer knew it; (2) the plaintiff is "qualified for her job;" (3) the plaintiff "suffered an adverse employment decision;"[2] and (4) the plaintiff shows "some nexus between her pregnancy and the adverse employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)).

---

[2] "Title VII requires a claimant to file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." *Anderson*, 694 F. App'x at 86. Fry avers that she filed a complaint with the EEOC on January 2, 2019, and received her right-to-sue letter on June 12, 2019. *Doc. 19* at 3. This satisfies her administrative filing requirements for the purpose of her Title VII claim on this motion for default judgment. Section 1981 claims, on the other hand, do not require the exhaustion of administrative remedies. *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975).

Here, Fry satisfies the four elements of her prima facie pregnancy discrimination claim. First, she pleads that she was pregnant and that she "advised her manager, DeAndre, that she was pregnant." *Doc. 19* at 4. Second, she pleads that she satisfactorily worked for Sweet Home without any formal discipline for nearly two years. *Id.* at 3. Third, she pleads that "she was taken off the schedule and not given any work assignments." *Id.* at 4. Fourth, she pleads that Sweet Home "effectively terminate[ed] her due to her pregnancy" because she was marked inactive and "would have to reapply as a potential new hire after her pregnancy." *Id.* at 5. This satisfies us that Fry's second amended complaint constitutes a legitimate cause of action under the Pregnancy Discrimination Act of Title VII for the purposes of her motion for default judgment.

As to Fry's Section 1981 claim, to establish a prima facie claim of race discrimination, she must show that "(1) she is qualified for her position, (2) she suffered an adverse employment action, and (3) the adverse employment action gave rise to an inference of unlawful discrimination." *Ellis v. Bank of N.Y. Mellon Corp.*, 837 F. App'x 940, 941 (3d Cir. 2021) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)). Here, for the same reasons we discussed above, Fry pleads that she is qualified for her position and that she suffered an adverse employment action. *Doc. 19* at 3-4. Fry also pleads that she is African American, and that she was "removed from a job because" one of Sweet Home's

8

clients "does not want a black caregiver in her home." *Id.* at 2, 4. As above, this satisfies us that Fry's second amended complaint constitutes a legitimate cause of action under Section 1981 for the purposes of her motion for default judgment. The only remaining consideration is the amount of damages.

### C. Fry established her lost-wage damages, her compensatory damages, and her attorney's fees.

"In considering the amount of damages or the truth of an averment of evidence, the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant." *E. Elec. Corp.*, 652 F. Supp. 2d at 605 (citing *Durant v. Husband*, 28 F.3d 12, 15 (3d Cir. 1994) (stating that, if necessary, the court may hold a hearing to assess damages)); *T.D. Melchiorre, Inc.*, 2021 WL 426493, at *5 ("[I]f the amount of damages 'can by computation be made certain,' then a hearing is unnecessary.") (quoting *Comdyne I, Inc.*, 908 F.2d at 1194).

Here, Fry provides us with two affidavits to establish her damages—the Fry affidavit regarding lost-wage damages and compensatory damages and the Weisberg affidavit regarding attorney's fees. *Docs. 31-1, 31-2.* In the Fry affidavit, Fry avers that she was "an On-Call employee with Sweet Home, and as such, [she] only worked and was compensated when [she] was providing services to a consumer of Sweet Home." *Doc. 31-1* at 2. She earned $12.00 per hour and

"was available to work at least 40 hours per week, with occasional overtime." *Id.* at 4. Fry also avers that she was without work for approximately 58 weeks. *Id.* Using these figures as the basis for what she "could have reasonabl[y] earned while working for Sweet Home," Fry computes her lost-wage damages as $27,340 (which reflects a deduction of $500 Fry earned at other temporary employment). *Id.* Fry also demands unliquidated compensatory damages and mentions that she "suffered emotional distress . . . significant stress and anxiety because [she] was unable to find a job and unable to pay [her] bills" and that she was "forced to incur significant debt," all of which "caused significant stress and disruption to [her] life." *Id.*

Fry has further clarified her damages during a June 23, 2021, evidentiary hearing. *Doc. 34*. At this hearing, Fry offered testimony which supported her assertion that 40 hours per week for 58 weeks is a reasonable basis for the calculation of her lost-wage damages, which considers both overtime and time off for maternity leave. Fry also offered testimony regarding her compensatory damages, and she spoke specifically to the difficult experiences she suffered from the discriminatory treatment itself and from her experiences afterward.

Based upon the Fry affidavit and Fry's testimony at the hearing, we find that $27,340.00 in lost-wage damages is appropriate. Further, we find that an

additional $15,000.00 is an appropriate compensatory damages amount in this case.

As to the Weisberg affidavit, Fry's counsel "believe[s] an hourly rate of $300.00 is reasonable in this case, as this Court has previously awarded our firm $300.00 per hour for attorney work in a case involving employment issues." *Doc. 31-2* at 3 (citing *Poff v. Prime Care Med., Inc.*, No. 1:13-CV-03066, 2016 WL 3254108, at *7 (M.D. Pa. June 14, 2016)). "An award of attorneys' fees for the prevailing party in a Title VII action is provided by in 42 U.S.C. § 2000e-5(k)." *E.E.O.C. v. Fed. Express Corp.*, 537 F. Supp. 2d 700, 721 (M.D. Pa. 2005). To meet the burden of demonstrating that the requested fees are reasonable, Fry "must submit evidence supporting the hours worked and the rates claimed." *Poff*, 2016 WL 3254108, at *3 (citing *E.E.O.C.*, 537 F. Supp. at 721) (internal quotations omitted). In the Weisberg affidavit, Attorney Weisberg sets his hourly rate at $300.00. *Doc. 31*-2 at 3. The Weisberg affidavit also references our decision in *Poff*, where we found that Attorney Weisberg was entitled to a reasonable hourly rate of $300.00. *Id.* (citing *Poff*, 2016 WL 3254108, at *7). The Weisberg affidavit also provides us with information regarding Attorney Weisberg's education and experience. *See id.* *Poff*, along with the Weisberg affidavit, provide us with sufficient evidence to establish Attorney Weisberg's hourly rate of $300.00. The affidavit further provides us with a detailed explanation of the hours billed and

11

supporting information for these entries, which establishes that Attorney Weisberg billed 59.15 hours in this case. *Doc. 31-2* at 1-6.  Thus, we are satisfied that the Weisberg affidavit allows us to establish the amount of attorney's fees in this case as certain in the amount of $18,210.00.[3]

**IV. Conclusion.**

In accordance with the above, on this **23rd** day of **July, 2021**, we will order that Fry's motion for default judgment (*doc. 31*) be granted, and we will enter default judgment against Sweet Home.  A separate order shall follow.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

---

[3] This figure includes the reimbursement of an additional $465.00 related to the filing fee and service of process in this case. *Doc. 31-2* at 6-8.